Good morning, Your Honors, and may it please the Court. My name is Jim Weixler, and I rise today on behalf of the plaintiffs in this matter, the appellants. We approach the Court today with a request that the case be reversed and remanded to the District Court below, especially in light of the Supreme Court's recent pronouncements in the Telabs matter last year, as well as two cases that have come up recently in this Court, mainly Metzler and South Ferry. Metzler was a case that came from a panel in Pasadena on August 26th, which construed Telabs as still preserving some of the standards for reviewing scienter claims under the PSLRA that this Court had pronounced in Gomper in 2002. In Metzler, the Court, the Court in that case still analyzed the scienter claims in that case under the piecemeal approach that had been ruled out by the Telabs Court, analyzed each particular set of facts and omissions that went into each particular case. You're telling us that Metzler is inconsistent with Telabs? I'm saying that Metzler took an inconsistent approach with Telabs, and it's also inconsistent with the second case that came from this Court shortly after Metzler. So you're urging us to follow one of the cases that's both inconsistent with another case from our Court and that's inconsistent with Telabs? There is a tension there. South Ferry is – South Ferry is more adherent to Telabs for several reasons. First of all is that South Ferry looked at the pre-Telabs jurisprudence of this Court, which was exactly what was followed by the district court below. Those cases were Silicon Graphics, Vantive, and Readwright. Those were the three cases, not Gomper, that were relied upon in – primarily by the court below. And in South Ferry, the panel of this Court, this time from a panel in Seattle, said that the pre-Telabs law, such as Silicon Graphics, was now of suspect validity because of what happened with the Supreme Court and Telabs. Telabs ordered a more – a more collective approach, of course, to reviewing the allegations in the complaint that go to the issue of Sienter under the PSLR. What's the date on the Metzler panel's decision? I'm sorry, Your Honor? Do you know the date on the Metzler panel's decision? The Metzler – well, Metzler first came out with the original opinion in June of this year, and then on August 26th, Metzler – the Metzler panel issued an amended opinion, and that's the one that is – is being advanced by defendants in this case. Now, the plaintiffs in Metzler have since petitioned for an en banc review from this court, and they also supplemented their petition for en banc review with the – with the decision that came out in South Ferry a few weeks after the Metzler case. South Ferry – what South Ferry did was the – the panel there ordered the case back to the district court for reconsideration in light of TLABS. And they made – they made a very important point, which the TLABS court, of course, did in its own opinion. They said that the parties here and the district court here do not – did not have the benefit of the TLABS rule when they were before the district court. They did have the benefit of a pleading rule, right? They did have the benefit of a pleading rule, but in – of course, under the PSLRA and the statute. And that's really what we're looking at, the statute, right? We – we are looking at the statute, but – well, let's look at it. But when we – but when – when we were in the district court, of course, the district court construes the statute according to Silicon Graphics and Vancev and – and Readwright and the other cases that were – the other cases that were mentioned in the district court's opinion on the – on the dismissal of the first amended complaint. Now, in South Ferry and TLABS, both of those courts recognized that the rule in TLABS was new, and nobody had it before them when – when the case was in the district court. And you think that TLABS is more favorable to your position than our prior rule was? I think it is, Your Honor. And the reason is, is because it demands that the district court look at the complaints allegations of Sienta as a whole, instead of breaking them down into each predicate act or omission that comprises this course of fraudulent conduct that is alleged in a securities fraud claim. And in our case, it was the campaign of deception, which is outlined in the record and in our briefs, and most notably in the first amended complaint, where there were many acts and omissions which went into that campaign, which comprised the predicate acts and omissions of that campaign. But the district court took a look. They didn't do what TLABS would later said should have been done. The district court looked at each one of those predicate acts and omissions and then said, this is why I don't find that the strong inference of Sienta has been created. It adds to this particular act or omission. TLABS says, look at them all together. And you say, are the – are the – I understand that we need to look at – at everything together, but how can we do that without looking at each of the individual allegations to see whether it holds  Well, we – we can, Your Honor. And there are some – there are some – I'm sure that there are complaints where none of the allegations are going to have any collective weight to – to And you've got allegations about – about telephone calls and – and fairness opinions. And I don't know how we connect the telephone calls and the fairness opinions without looking at each of those individual allegations. Well, we can – we can look at them individually to – to understand their nature, but then we have to – we have to look at them collectively, which is – the district court – If neither one of them seems to hold water individually, I don't see how we look at them collectively and decide that they hold water. Well, sometimes it's – it's sort of the rule that, you know, sometimes the – the complaint can be greater than the sum of the parts. And if the – and if, you know, we can look and argue at a particular fact or allegation and see if it raises a strong inference of Sienta by its own, but that's not – and – and that's what the district court did, of course, following Silicon Graphics and – and our previous practice in the circuit. But then TELEBS came out after the case had left that court and said, we need to look at it in broader – with a broader horizon. I guess, counsel, I'd appreciate it if you'd turn to the – to the individual complaints that you've got and – and let's deal with them. I'm happy to deal with them individually or happy to deal with them holistically, but – Okay. Well, one – one – one of the – one of the problems with what the district court did is that we need to address is that there were two claims that have to do with the Sienta allegations. There were 10b claim, of course, general fraud in the purchase or sale of a security, and the 14e claim, which is – which is fraud or misrepresentation in connection with a tender offer specifically. The district court allowed in – in dismissing the First Amendment complaint and the order that we're here on today, the district court granted leave to amend the 10b claim with allegations concerning oral misrepresentations that were made in the course of – in the course of the campaign of deception. And what that – what that had to do was – was with Mr. Peticic, who was the community bank, who was – who was making oral misrepresentations or – to – to the shareholders. And the district court's concern there with that particular instance was that Mr. Peticic – we had not – we had supposedly not alleged that there was a tie between those oral misrepresentations and any – any impetus from – from capital itself or from Mr. Reed, the president of capital himself. If – if there can be an amendment below, I think that's what the district court was looking for. And it allowed leave to amend accordingly on that 10b claim. However, it refused – the district court refused to grant leave as to the 14e claim regarding fraud or misrepresentation in connection with the tender offer. And what – what was significant about that is at the end of the district court's decision, it – it made the statement that the 14e claim has to be based basically within the four corners of the registration statement. And that's not what Section 14e says. Section 14e makes illegal or wrongful any fraud or misrepresentation or misleading statement made in connection with a tender offer. It doesn't have to be within the four corners of the registration documents themselves. It has to be in connection with. Now, that was why the district court denied leave to amend on the 14e claim, when in fact an amendment as to the oral misrepresentation on the 10b claim is going to accomplish the – the same necessary amendment with the 14e – with regard to the 14e claim. We have – so we have – so we do have an omission there, I believe, with respect to the trial court, that the – that the case, if for no other reason, if there – if there is a basis for a reversal and remanding for a – for an amendment of the First Amendment complaint, it needs to also include the 14e claim, because that – because that construction of the statute of the section was an error. We – I would suggest that – that it would be appropriate for this Court to, in light of Taleb's and in light of South Ferry, to – to remand so that the parties can be given the – the appropriate direction and be given the opportunity to amend and – on the 10b and 14e claims, and also to – and also to give the district court more guidance and another chance to reconsider under the new – the new standards of Taleb's. Now, there is a second part of our appeal here, and that has to do with section 11 of the 33 Act, and since I'd like to reserve some time for rebuttal, I will touch upon that briefly. Section 11 of the 33 Act deals with false or misleading statements in the registration statement. Now, that is – that is confined to the four corners of the registration statement. The district court here held that because the complaint in general sounded in fraud, that Civil Rule 9b had to apply to those allegations and that they had to be alleged with particularity. However, the approach that the district court took in analyzing that was to say, well, yes, Rule 9b applies. However, and then the – the analysis that was gone through by the – by the district court on the section 11 claims was much more detailed and much more stringent than a 9b analysis would – would indicate. It was – in fact, it was more along the lines of a PSLRA type of indication where each of these – each of these allegations were broken down and looked at and seen if the – if there was a strong inference of essentially fraud was – was there. Your claim is that with respect to section 11 claims that the district court was just – was too active in – in applying 9b? It was too stringent, Your Honor, and the – it was much more extensive, as a matter of fact, in the order with regard to the section 11 claims than it was with the 10b or 14e claims, because with regard to those latter claims, the – the district court incorporated much of its – its action on the original complaint. The – the rule in – in Dow Systems, which is what the court below had attempted to follow, was that the court was – was required to – was not required to, quote, sift through the complaint to see if any proper allegations of fraud had been raised. So in – in so doing, I think the – the court, you know, acknowledged the – the Dow Systems standard, acknowledged – acknowledged the analysis that it had to do, but then went and sifted through the complaint to see if, you know, to see if there was anything that it could find that would – that would raise – that would militate against an inference of fraud. And that – that analysis was too – was too stringent. It was too stringent under the – under the rule in Civil Rule 9b. And that's why – in essence, why we believe that the section 11 order of dismissal should be reversed as well. I see I'm almost out of my time, and I would ask the Court's permission to reserve the balance of my time. Roberts. Good morning. May it please the Court. Bruce Erickson, appearing for defendants and appellees. I think the interest in Telebs here is really wholly manufactured in an attempt to cover the weaknesses of this appeal. The fact of the matter is that Telebs did not change the Ninth Circuit test in any salient respect. In fact, Telebs, at page 2509 of 127 Supreme Court Reporter, cited this Court's opinion in Gomper for the position – for the proposition that the review ought to be holistic, not the word used at that point in the opinion. But the point was made. The Supreme Court slightly with approval of this Court's opinion in Gomper that you should look at the whole complaint and not merely parts of it. The Supreme Court said the inquiry, as several courts of appeals have recognized, is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation scrutinized in isolation meets that standard, citing, among other cases, Gomper. So the idea that Telebs changes the rule of this circuit as to how you look at a complaint in a PSLRA case is simply incorrect. It doesn't change the rule of this circuit in that regard. Perhaps it does in some other regards not pertinent to this case, but in the respects material to this case, there is no change in the circuit's rule. And that is something – and the court below did not get it wrong. To be sure, the court below is ruling before Telebs, but the court below looked collectively at all the allegations. The Court noted at page 9 of the slip opinion that it was required to look at the totality of the allegations, and that's what it did. To be sure, it looked at them one by one, as Judge Bibas pointed out here today. How else does one look at a whole series of allegations, but one at a time? But there was no pigeonholing. There was no narrow-minded view of this. The court did what it should do, both under Gomper and under Telebs, which is look at all of the allegations. And the fact of the matter is, whether you look at them one by one or all at once holistically, there is nothing here – and this is the fatal flaw with the 10b-5 case – there is nothing here that ties my clients, Capital or Mr. Reed, to this so-called campaign of deception. All the allegations about the campaign pertain to the alleged telephone comments of this Mr. Petovich, not a defendant, an officer of Napa Community Bank itself, not a defendant. Nothing ties Mr. Reed, nothing ties Capital to these alleged phone comments of Mr. Petovich. The argument being made by appellants is if we were to say in these waning days of the campaign that a Senator Obama or a Senator McCain was saying to their campaign workers, let's get out the vote. It's really important that we get out the vote. I want you to get on the phones and call up the electorate and tell them to please vote. And so some overeager campaign worker were to get on the phone and tell some lies. Now, the overeager campaign worker telling the lies would have done a bad thing, but is that the responsibility of McCain or Obama if they didn't urge the lies be told and all they said was get out the vote? Of course not. There has to be much more than that, certainly in the securities fraud context, much more to establish SIENDR, but here there is nothing more. There is nothing pled in the amended complaint, nothing in the original complaint. The district judge gave appellants the opportunity to amend, pointing out that their campaign of deception allegations were insufficient, and they declined the opportunity to amend. Though given it, they stood on their complaint as was, though it in no way ties my clients to these alleged phone remarks. The phone remarks in and of themselves would not add up to a securities claim. There's no showing they were made to the named plaintiffs. There was no showing they were made to any class member. They're alleged to be made to a handful of individuals, not one of whom is alleged to have accepted the exchange offer. So they are nulty in and of themselves, but the fact of the matter and the fatal flaw here is that they are in no way tied to the defendants in this case. They are simply tied to non-parties. Nothing in TELABS changes the way that this Court should look at that. Nothing in TELABS makes wrong the way the district court looked at that. Let me comment for a moment on the suggestion that this case should be remanded for reconsideration in light of TELABS. I think that's a particularly pointless here for three reasons. First of all, as I've already noted, the plaintiffs were given an opportunity to amend and declined to amend. Second, the standard of review here, of course, is de novo. Where there's a de novo standard of review, what would be the sense of remanding for another look? Your Honors are obviously capable of making the judgment whether TELABS has changed anything. And third, as we pointed out in our response to Appellant's 28J letter, there is no trend to remand in light of TELABS. There are a few stray opinions that have done so. But on the whole, the opinions of this Court and the other circuits have not remanded in light of TELABS. Mr. Archuleta, have you looked at Messler and South Ferry? I have. Are you concerned that there's a conflict, a misdirection here between our two panels? There may be differences, but I don't think there are any salience to this case. South Ferry is really a case about the core operations inference, which has no significance whatsoever to this case. This is not a core operations case. We're not talking about whether senior management knows what is going on at the bank, which would raise the core operations inference. That was the issue in South Ferry. There's perhaps dicta in South Ferry that, at first blush, may seem a little inconsistent with Meltzer, but not in any way that's material to the case before this Court. On the key points of whether the Ninth Circuit test for looking at cyanide allegations has been changed in general, I see no inconsistency. I see no misdirection. And I see nothing pertinent to this case. As I've said, TELABS affirms this circuit's approach, as stated in Gompers. To be sure, TELABS in other circuits affected a greater change in the law, a big change in the Seventh Circuit, a fairly large change in some other circuits. But in terms of what this circuit was doing, I think TELABS is very, very close to what this circuit has been doing all along, and I see no misdirection that's of any importance to this case. Now, turning to the Section 11 allegations, I think the salient point here and what I see completely missing from Appellant's argument is this point of law, which the district court clearly recognized. There is no freestanding completeness requirement in the securities laws. This Court said that in the Brody case. It said it in the Vantive case, both cited by the district court, neither affected in any way by TELABS or anything else. The argument that counsels made in briefs, didn't really hear it today, but the argument made in the briefs is that we would have liked to see more. In addition to what you tell us about the fairness opinions, we would have liked to have been told that this banker has rendered other fairness opinions for capital on other occasions and that some of those, a number of those opinions, also express the view that 150 percent of book value was a fair price from a financial point of view. Now, they may be interested in that. People are often interested in various things, but that doesn't mean it's material. It doesn't mean it has to be included in the opinion or in the disclosure. These were very thorough disclosures, and they noted the salient points. They noted that JMP, the banker, was the financial agent and advisor of capital, not of NCB, not of Napa Community Bank, but of capital. They noted that capital paid for the opinion. They noted that there was an inherent conflict of interest in having capital, a party that already owned 51 percent of this bank and controlled it making the offer. They noted that this was not arm's length. They noted that the ratio, the 150 percent of book value, was lower than that of some peer institutions. They noted that this was not a recommendation but merely a fairness opinion. They noted the exact price paid for the opinion. All these things were disclosed, and appellants are left with no argument other than, in addition to all those disclosures, we would have liked to see more. We would have been interested in other facts. They cannot show anything that's rendered misleading by what is disclosed. They cannot show anything that is untruthful. In other words, there is nothing that shows a Section 11 violation. They simply say we would like more and more. But under this Court's authorities, as I say, Brody and Vantive, there is no freestanding completeness requirement that entitles you to more, more, without showing that without more, what is said is somehow misleading. So for that reason, I think also the Section 11 claim simply has no merit. A few other points. It seems that appellants have abandoned many of their arguments or at least not mentioned them, and I think they're adequately dealt with in brief. But the notion that this was misstated as a premium to fair value is, I think, The statement was that it's a premium to book value. The notion that my clients had to be more bullish than they were about the future profitability prospects of the bank is, I think, frankly, a silly argument unsupported by any citation to authority. The facts were laid out. The shareholders were told that the bank had made a lot more money in the first quarter of 2005 than it had the previous year, more than three times as much. Anyone who extrapolated that profit figure could see that the bank, if you extrapolated the first quarter, would end up at over a million. And, in fact, as appellants say, it ended up at somewhat under a million. The idea that there's some rule that you're required to use gaudy adverbs in making a forecast, that you're required to say not only that we think the bank's going to make more money, but we think the bank's going to make a whole lot more money, or something like that, finds no support in the law and is completely inconsistent with the PSLRA's provisions regarding forward-looking statements. The law is designed to encourage forward-looking statements, not to put little tricky gotchas on it, like if you don't use the right adverb, you're in trouble. For all these reasons, I think the district court got it right. The district court twice rendered thoughtful opinions. It considered everything that the plaintiffs raised below, and they really have raised nothing of interest here. As I said, I think the telebs argument is kind of a last gasp to find an issue here that they can't find in the record, and it just isn't there. When you look at telebs, it's very consistent with what this Court has done. There's absolutely no reason for a remand. I would urge this Court simply to affirm the well-reasoned job below. Is there no further questions? Thank you, Mr. Erickson. Thank you. Your Honors, very briefly, to respond to counsel's statements. I don't think we can ignore telebs. Telebs is an intervening case in the Supreme Court, and I think we ignore it at our peril. It may be that I think the Court has rightfully perceived some tension between Metzler and South Ferry. However, it may not be of much consequence if the district court had followed the approach of Metzler in following the Gomper case, but it didn't. It followed Silicon Graphics. It followed Vantive. It followed Readwright. Those are the cases that it relies upon in structuring its analysis and its opinion. And those are the cases that in South Ferry, the panel of this Court said the Supreme Court's recent telebs decision also discusses the level of detail required under the PSLRA, and with its controlling and persuasive weight, it suggests that perhaps Silicon Graphics, Vantive, and Readwright are too demanding and focused too narrowly in dismissing vague, ambiguous, or general allegations outright. That's pretty strong language. That's coming from this Court saying that we need to revisit those cases and we need to not rely upon them any further. This is why the district court, along with the other reasons that I've mentioned, needs to have this reversed and have it remanded back so that it can reanalyze it under the appropriate standards as announced in telebs and explained further in South Ferry. Okay. Thank you.
judges: Beezer, Bybee, Roth